**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**RONALD QUINN,**

**Defendant.**

**Case No. 2:22-cr-20040-HLT-3**
**Case No. 6:25-cv-02711-HLT**

**MEMORANDUM AND ORDER**

Defendant pleaded guilty to possession with intent to distribute 5 grams or more of methamphetamine. The undersigned sentenced him to 108 months in custody. Defendant now proceeds pro se and asks the Court to vacate his sentence under 28 U.S.C. § 2255 based on government misconduct and ineffective assistance of counsel.[1] Docs. 294 & 306 as supplemented by Docs. 301, 302, & 304. Defendant alleges that the government withheld exculpatory text messages. And Defendant contends his attorney was constitutionally ineffective at sentencing because the attorney: (1) failed to challenge information in the presentence investigation report or raise objections, (2) asked for a simple variance instead of challenging officers' testimony, and (3) failed to seek a downward departure related to Defendant's circumstances and role in the offense. The government filed a response in February.[2]

[1] The Court liberally construes Defendant's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

[2] Defendant did not file a reply. The Court granted the government several extensions in part based on the evolving nature of Defendant's arguments. The government filed its response on February 27, 2026. Defendant's reply was due on April 3. He did not file a reply. The government remailed the briefing on April 13 to FCI Otisville, which is not the address Defendant has identified as his contact address. To date, and despite five months passing since the government remailed its response, Defendant has taken no action in this case. His last filing was in December 2025. He did not file a reply. He did not seek an extension of time to file a reply. He did not seek other relief from the Court or seek an update. He has not updated his mailing address, which is his responsibility under the local rules. D. Kan. Rule 5.1(b)(3). It is not the Court's job to hunt down his contact information.

The Court recalls this case and carefully reviewed the motion. Defendant does not show an entitlement to relief based on the text messages or counsel's representation. The text messages were Defendant's own exchanges with law enforcement. Defendant acknowledged possessing them when he filed another lawsuit, which lawsuit he filed before he pleaded guilty in this case. And Defendant does not establish either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), on his ineffective-assistance-of-counsel arguments. Defendant does not show that his attorney's performance was objectively unreasonable and prejudiced him. The Court therefore denies Defendant's motion and amended motion.

## I. BACKGROUND

A Kansas Highway Patrol Trooper stopped Defendant and his wife while they were driving on I-70 on November 4, 2020. The trooper smelled marijuana and saw a green leafy substance on the floorboard of the vehicle. He placed Defendant in handcuffs, saw Defendant had an empty holster, and advised Defendant of his *Miranda* rights. Defendant told the trooper about the firearm, and the trooper also found a container with methamphetamine, baggies, and a scale.

Law enforcement conducted an in-custody interview of Defendant on November 5, 2020. Defendant admitted the methamphetamine was his but stated that the gun was not his. He also discussed his purchases and sales of methamphetamine and agreed that he purchased and possessed to distribute at least 141 grams of actual methamphetamine.

A grand jury returned an indictment in August 2022. Defendant was arrested and released on conditions. Doc. 31. The magistrate judge ordered him detained a few months later after finding violations. Doc. 70. Defendant filed a motion for release in January 2023, and the magistrate judge held a hearing on February 7. Counsel moved to withdraw, and the magistrate judge held another hearing on February 17. New counsel orally moved to withdraw the January motion because, as

all parties later agreed, it relied on a falsified document. Doc. 132 at 4. New counsel filed a new motion for release. The magistrate judge granted the motion and released Defendant to inpatient treatment in March. Doc. 109. But she ordered him to be detained in May after finding violations. Doc. 116. Defendant remained detained for the rest of the case. *See* Doc. 140.

Defendant challenged whether law enforcement complied with *Miranda v. Arizona*, 384 U.S. 436 (1966), and whether his own statements to law enforcement were voluntary. The Court conducted a hearing and found that law enforcement properly advised Defendant of his *Miranda* rights and that Defendant had knowingly and voluntarily waived those rights before speaking with them. Doc. 160. Defendant ultimately pleaded guilty with a plea agreement to possession with intent to distribute 5 grams or more of methamphetamine. Doc. 183.

The United States Probation Office prepared a Presentence Investigation Report (PSR). The Court determined that Defendant's total offense level was 31, his criminal history category was I, and his advisory guideline range was 108-135 months' imprisonment. Defense counsel moved for a downward variance to 60 months in custody. Counsel argued that a variance was warranted based on Defendant's history and personal characteristics (including past work experience, family support and obligations, family tragedies, lack of serious criminal history, and drug addiction), Defendant's desire for substance abuse treatment, and the deterrent effect of his pretrial incarceration.

The Court considered Defendant's request and discussed the § 3553(a) factors. But the Court determined a variance was not appropriate and imposed a low-end guideline range sentence of 108 months. Defendant appealed. Counsel filed an *Anders* brief. The Tenth Circuit dismissed the appeal. Defendant now collaterally challenges his conviction and sentence.

## II. STANDARD

Section 2255 allows "a prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence imposed was in excess of the maximum authorized by law, or is otherwise subject to collateral attack [to] move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. A petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice" to prevail on a § 2255 motion. *Davis v. United States*, 417 U.S. 333, 346 (1974). A court must conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). But a court need not conduct an evidentiary hearing based on conclusory allegations. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

## III. ANALYSIS

Defendant's § 2255 claims boil down to two issues. First, the government did not turn over exculpatory text messages to him (which would arguably challenge his underlying conviction). Second, he received ineffective assistance at sentencing because counsel failed to request changes to the PSR, failed to object to the PSR, and argued for a variance instead of a departure.

### A. Exculpatory Text Messages.

Defendant's first claim is about the text messages he exchanged with law enforcement. Defendant alleges:

> There is some crucial information that was withheld from my [attorneys] and I that should have been made available. Detective Cory Horalek and SA Ellen Judy interviewed me on Nov 5, 2020. If you recall we spoke about this at the Jackson/Denno hearing. What we didn't talk about was the text (*Note: Between (100-140) messages total) (These messages a Brady violation?) messages

> between Horalek and myself from Nov 5, 2020 – Aug 21, 2021. (*They will prove the drug quantity was incorrect as well) The fruits of these text messages would have proved he did not treat me as a suspect.

Doc. 301 at 2. Defendant appears to direct this argument at both his conviction and sentence; he alleges that he would have not pleaded guilty had the text messages been disclosed, and he also argues that they would bear on the drug-quantity calculation at sentencing.

A defendant seeking habeas relief based on withheld evidence must show that (1) the evidence was favorable to the defendant because it is exculpatory or impeaching, (2) the government suppressed the evidence willfully or inadvertently, and (3) prejudice. *McGregor v. Gibson*, 219 F.3d 1245, 1253 (10th Cir. 2000) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). The government cannot suppress evidence that is already available to and known by the defendant before trial. *Id*. at 1253-54 (quotation omitted). And the government's lack of disclosure is immaterial if the defendant has independent knowledge of the evidence. *Id*. at 1254 (citation omitted).

There are several problems with Defendant's assertion. First, Defendant offers only the conclusory allegation that the messages are exculpatory. *See United States v. Thompson*, 66 F. App'x 837, 838 (10th Cir. 2003). He offers no factual details in support. Second, even if the Court were to assume the messages were *Brady* material, Defendant was a party to the text conversations. He had knowledge of them. And, according to Defendant himself, they were available to him; he possessed them. Indeed, Defendant filed a civil rights case in the District of Kansas based on the events of this case. Defendant stated in his amended civil rights complaint, filed January 5, 2024:

> On 11/05/2020, Cory Horalek conducted an interview with Ronald Quinn. The interview started with [b]oth parties entering into an agreement. Mr. Horalek then breached his agreement with Ronald Quinn causing damages and losses. Mr. Quinn has the text

> messages, proof of agreement, supporting evidence, and other factual evidence that will be produced at trial.

*Quinn v. Davis et al.*, Case No. 5:23-cv-03244-JWL, Doc. 7 at 2 (emphasis added). Defendant had knowledge and possession of the information he claims is exculpatory and could have shared it with counsel. He also had it before he entered a plea of guilty. Any failure to disclose the texts is immaterial because Defendant had independent knowledge of the evidence. *See McGregor*, 219 F.3d at 1253. Defendant cannot show prejudice.

**B. Ineffective Assistance.**

Defendant lists multiple things he believes counsel did wrong: counsel failed to challenge information in the PSR or raise objections, asked for a simple variance instead of challenging officers' testimony, and failed to seek a downward departure related to Defendant's circumstances and role in the offense. Defendant fails to show counsel was ineffective or that Defendant was prejudiced.

The Court applies the standard identified in *Strickland* to decide whether Defendant's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Defendant must satisfy a two-pronged test to prevail.

First, Defendant must show that counsel's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The Court affords considerable deference to counsel's strategic decisions and "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Second, Defendant must show prejudice. This prong requires him to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A "reasonable probability" means the probability is "sufficient to undermine confidence in the outcome." *Id.*

The Court may rest its decision on either or both prongs of the *Strickland* test. *Id.* at 697.

**1. Counsel's Performance.**

Counsel's performance was objectively reasonable. The Court notes three problems with Defendant's complaints about counsel's performance before explaining why the performance was objectively reasonable. First, Defendant contends that counsel "convinced him" to pursue a specific strategy. This means that Defendant agreed with counsel and that counsel was not contradicting Defendant's instructions. Defendant went along with that strategy until it became apparent he was not going to get the sentence he wanted. Second, Defendant's allegations are wholly inconsistent with statements he made at sentencing to the Court. *See* Doc. 223. Third, Defendant only began complaining about counsel's representation after the Court announced a tentative sentence of 108 months. Before that point, Defendant stated under oath that he had discussed the PSR with counsel and had plenty of time to review it. He agreed that he had no objections and decided not to read what he had prepared to read in mitigation of his sentence. But after Defendant learned that the Court did not intend to give him the requested variance, Defendant had a lot to say. The Court heard it before imposing final sentence. He complained about his treatment from the government, said the process had not been fair, and that he had "horrible, horrible counsel from day one." This series of events suggests that Defendant's complaints are reactionary to his disagreement with the Court's decision and not with counsel's performance.

Regardless, counsel pursued a reasonable strategy at sentencing. He highlighted difficult circumstances Defendant had faced and explained how these circumstances led to Defendant using methamphetamine. Counsel emphasized the damage that drug use and incarceration had done to

Defendant. He highlighted Defendant's family support, community ties, lack of a scorable criminal history, acceptance of responsibility and interaction with law enforcement after arrest, Defendant's desire for drug treatment, and his willingness to remain on extended supervised release if granted a variance. Counsel did not challenge the veracity of law enforcement but instead asked for a variance. This makes sense because the Court already found in the *Jackson v. Denno* hearing that the agents were credible.

The Court's decision to deny a variance at sentencing does not equate to a finding that counsel's strategy was unreasonable. To the contrary, the Court fully considered Defendant's request. The Court considered factors putting both upward and downward pressure on Defendant's sentence. The Court found that Defendant's behavior showed that repeated encounters with law enforcement did not deter Defendant's criminal conduct, either before or after indictment. On the other hand, Defendant's family support and lack of scoreable criminal history were commendable. The Court summarized its considerations by stating:

> Putting all this together, I don't blame you for making the sentencing request that you are asking. And I understand the reasons for making it. And I have no doubt that your family love you and want to be with you. And you likewise want to be with them.
>
> But I think after looking at the various factors in this case, that 108 months is a sufficient, but not greater than necessary sentence when all the factors are considered. You repeatedly possessed with intent to distribute methamphetamine, and were often armed.
>
> You did it repeatedly, despite interactions with officers. You squandered the opportunities on pretrial release. And the public needs to be protected and you need to be deterred.

Doc. 223 at 28.

Strategic decisions of counsel are presumed correct unless they are completely unreasonable. Counsel's decisions at sentencing were strategic. Defendant has not shown they were completely unreasonable.

**2. Prejudice.**

Defendant did not suffer prejudice as a result of counsel's actions. The Court recalls Defendant's sentencing hearing, as well as other interactions with Defendant over the course of the case. The Court fully explained its reasoning to Defendant. The Court found it significant that Defendant was granted, and squandered, many opportunities while on pretrial release. The Court also noted that Defendant only received one two-level enhancement for a firearm, although officers caught him with one on three occasions.

Defendant verbally objected at sentencing about the Court's tentative sentence, although counsel indicated no objection. The Court listened to Defendant's comments and treated them as if Defendant were seeking reconsideration. The Court denied reconsideration. Defendant raises the same issues now. He makes no showing that the Court would have reached a different outcome had his counsel pursued a different strategy at sentencing. It would not have. Defendant distributed methamphetamine into the community for months. He engaged in the conduct despite interactions with law enforcement. He did not do well on pretrial release and squandered opportunities. Doc. 140 (outlining performance on pretrial), 160 (outlining performance on pretrial). A below-guideline sentence on grounds of a departure or a variance is not warranted.[3]

---

[3] Defendant's briefs seem to allege that counsel should have objected to (1) Defendant's dismissed cases being included in the PSR, (2) the drug quantity, (3) the gun enhancement, and (4) not being given a reduction for minor or minimal role. These objections lack merit, so there is no prejudice. Dismissed criminal cases are routinely outlined in the PSR in Part B as other criminal conduct. The information is relevant so the sentencing court can determine the adequacy of the criminal history category. Defendant also noted this concern to the Court at sentencing. Defendant's objection to the drug amount is unclear. But the bulk of the drug quantity was based on Defendant's own estimate to officers and recovered amounts. As for the firearm enhancement, the Court notes the facts in paragraphs 29 and 32 of the PSR. Doc. 207. Finally, a mitigating role reduction does not appear appropriate given Defendant's relationship with Eckstein, his knowledge of other members (e.g., Eckstein, Perez,

## IV. CONCLUSION

The record conclusively shows that Defendant is not entitled to relief. No evidentiary hearing is required. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (holding that no hearing is required where factual matters raised by a § 2255 petition may be resolved on the record).

The Court must consider whether to issue a certificate of appealability. A certificate of appealability is appropriate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

The Court does not find that its conclusions are debatable by reasonable jurists or that the issues merit further proceedings. Defendant has not made a substantial showing of the denial of a constitutional right. The Court declines to issue a certificate of appealability under Rule 11.

THE COURT THEREFORE ORDERS that Defendant's motions for § 2255 relief (Docs. 294 and 306) are DENIED. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: October 7, 2026

/s/ *Holly L. Teetet*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE

---

Hector), and the lack of evidence suggesting anyone controlled or dictated to whom he resold or at what price. Finally, the facts of this case do not appear outside of the heartland of cases in any respect.